## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## EASTERN DIVISION

| | |
|---|---|
| CODY WOOD,             ) | |
|       ) | |
|      **Plaintiff,**     ) | |
|       ) | |
| **v**               ) | **No.: 1:26-cv-1111** |
|       ) | **JURY DEMANDED** |

CODY WOOD,                                    )
                                             )
     Plaintiff,                              )
                                             )
v                                            )     No.: 1:26-cv-1111
                                             )     JURY DEMANDED
THE CITY OF LEXINGTON, TENNESSEE,            )
GORDON WILDRIDGE, in his individual and      )
official capacities as Mayor of the City of  )
Lexington, CHIP CLARK, in his individual     )
and official capacities as Alderman for the  )
City of Lexington, DONNA ROSS, in her        )
individual and official capacities as        )
Alderman for the City of Lexington,          )
JIMMY WHITE, in his individual and official  )
capacities as Alderman for the City of       )
Lexington, and TIM RHODES, in his individual )
and official capacities as Alderman for the  )
City of Lexington,                           )
                                             )
     Defendants.                             )

## COMPLAINT

### I.  JURISDICTION AND VENUE

1.      This is an action under 42 U.S.C. §§ 1983 and 1988 and 28 U.S.C. §§ 1331 and 1343 for damages, declaratory and injunctive relief both preliminary and permanent, to redress the deprivation of rights secured by the Fourteenth Amendment to the United States Constitution. Plaintiff further invokes the pendent and supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to hear and determine claims arising under state law, including claims under the Tennessee Public Employee Political Freedom Act, T.C.A. § 8-50-601 et seq., the Tennessee Human Rights Act, T.C.A. § 4-21-401 et seq., and for a declaration that the Board's vote to

terminate Plaintiff is void under Tennessee law. All of the actions complained of herein occurred in Henderson County, Tennessee, within the jurisdiction and venue of this Court.

## II.  PARTIES

2.      Plaintiff, Cody Wood, is a resident of Henderson County, Tennessee. He served as the duly appointed City Recorder and Chief Financial Officer of the City of Lexington, Tennessee from November 5, 2019 until his unlawful termination on March 9, 2026.

3.      Defendant, the City of Lexington, Tennessee, is a municipal corporation duly incorporated under the laws of the State of Tennessee, subject to suit under 42 U.S.C. § 1983 and the Tennessee Public Employee Political Freedom Act. The City operates under a Mayor-Aldermanic Charter and is governed by the Board of Mayor and Aldermen (hereinafter the "Board"). The City is the Plaintiff's former employer.  Service of process may be obtained on the City of Lexington, Tennessee by serving its Mayor, Gordon Wildridge, 33 First Street Lexington, TN 38351.

4.      Defendant, Gordon Wildridge, is and was at all times mentioned in this Complaint the duly elected and acting Mayor of the City of Lexington, Tennessee, and was acting under color of law, to wit: under color of the statutes, charter, ordinances, regulations, policies, customs, and usages of the State of Tennessee and the City of Lexington. Defendant Wildridge is sued in his individual capacity and in his official capacity as the chief executive officer and a policy maker for the City of Lexington. Mayor Wildridge can be served at 33 First Street Lexington, TN 38351.

5.      Defendant, Chip Clark, is and was at all times mentioned in this Complaint the duly elected Alderman for Position 6 of the City of Lexington, Tennessee, and was acting under color of law, to wit: under color of the statutes, charter, ordinances, regulations, policies, customs, and usages of the State of Tennessee and the City of Lexington. Defendant Clark is sued in his

individual capacity and in his official capacity as a member of the Board and a policy maker for the City of Lexington. Chip Clark can be served at 70 New Renfroe St., Lexington, TN 38351.

6. Defendant, Donna Ross, is and was at all times mentioned in this Complaint the duly elected Alderman for Position 4 of the City of Lexington, Tennessee, and was acting under color of law, to wit: under color of the statutes, charter, ordinances, regulations, policies, customs, and usages of the State of Tennessee and the City of Lexington. Defendant Ross is sued in her individual capacity and in her official capacity as a member of the Board and a policy maker for the City of Lexington.  Donna Ross can be served at 89 Bellemeade Dr, Lexington, TN 38351.

7. Defendant, Jimmy White, is and was at all times mentioned in this Complaint the duly elected Alderman for Position 5 of the City of Lexington, Tennessee, and was acting under color of law, to wit: under color of the statutes, charter, ordinances, regulations, policies, customs, and usages of the State of Tennessee and the City of Lexington. Defendant White is sued in his individual capacity and in his official capacity as a member of the Board and a policy maker for the City of Lexington.  Jimmy White can be served at 39 Johnson St., Lexington, TN 38351.

8. Defendant, Tim Rhodes, was at all times relevant to the events complained of herein a person purporting to act as Alderman for Position 2 of the City of Lexington, Tennessee, and was acting under color of law, to wit: under color of the statutes, charter, ordinances, regulations, policies, customs, and usages of the State of Tennessee and the City of Lexington. As set forth more fully herein, Defendant Rhodes had, by operation of law, vacated his office prior to the events giving rise to this action. Defendant Rhodes is sued in his individual capacity and in his purported official capacity as a member of the Board.  Tim Rhodes can be served at 130 Connor Lane, Lexington, TN 38351.

### III.  STATEMENT OF FACTS

9.      Plaintiff began his employment with the City of Lexington in August 2014 and was sworn in as City Recorder/CFO on November 5, 2019. As City Recorder, Plaintiff served as the chief financial officer and official recordkeeper for the City, a position of significant public trust.

10.     The City of Lexington operates under a private act charter enacted by the Tennessee General Assembly (Private Acts 2004, ch. 131, as amended, hereinafter the "Charter"). Section 13 of the Charter expressly provides that the City Recorder shall serve under the direction of the Board "until removed from the office for cause or resignation." This for-cause-only termination standard was reaffirmed by the Board's 2008 amendment to the Charter. Accordingly, under the express terms of the Charter, Plaintiff could only be removed from his position as City Recorder for cause.

11.     Throughout his tenure, Plaintiff performed his duties competently and faithfully. Among other things, Plaintiff identified and raised concerns to the Board that certain proposed compensation practices could expose the City to claims of illegal discrimination against minority employees, in violation of Title VII of the Civil Rights Act of 1964 and related federal and state law. Specifically, at the July 29, 2024, Board meeting, in response to a budget question asked by Alderman Roger Loftin, Plaintiff advised the Board that setting compensation for jobs predominantly held by minority employees below that suggested by the City's job evaluation study, while paying jobs predominantly held by white employees consistent with the job evaluation study, could constitute illegal compensation discrimination in violation of federal law. Plaintiff's warning was directed at protecting the City and its employees from illegal discriminatory practices.

12.     Beginning in 2025, the individual Defendants, led by Mayor Wildridge, began a campaign to remove Plaintiff from his position. Mayor Wildridge had stated to at least

one third party that he "did not trust" Plaintiff and that he was "after" him. Mayor Wildridge further told Plaintiff in February 2026 that Plaintiff answered to him and not to the Board, in direct contradiction of the City Charter.

13.    In the fall of 2025, Plaintiff and Mayor Wildridge became aware that Defendant Tim Rhodes had moved his residence outside of the corporate limits of the City of Lexington. On September 12, 2025, Defendant Rhodes sold his residence that was in the city limits and on October 3, 2025, he purchased and began residing in a new home[1], outside the city limits. Section 9 of the Charter expressly provides that in the event the Mayor or Alderman should move from the municipality during their term of office, their position shall be presumed to have been vacated and it shall be declared vacant and filled by the remaining members of the Board. Independently, T.C.A. § 8-48-101 provides that a municipal official's office becomes vacant by operation of law upon the official ceasing to reside in the district for which he or she was elected. Accordingly, upon purchasing his home outside the city limits on October 3, 2025, Defendant Rhodes's position as Alderman was presumed vacant under Section 9 of the Charter and vacant by operation of law under T.C.A. § 8-48-101. The Board was obligated to declare his seat vacant and fill it; it failed to do so.

14.    At the direction of Mayor Wildridge, and as part of his official duties, Plaintiff contacted the Tennessee Municipal Technical Advisory Service (MTAS), District Attorney General Jody Pickens, and State Representative Brock Martin regarding official city matters, including the Tim Rhodes residency issue and a proposed amendment to the City Charter. On or about January 15, 2026, Plaintiff contacted District Attorney General Pickens at Mayor Wildridge's direction to inquire about initiating *quo warranto* proceedings under T.C.A. § 29-35-

---

[1] Defendant Rhodes' current address is omitted for privacy and safety reasons and will be disclosed to counsel for Defendant Rhodes upon request and otherwise disclosed by agreement of the parties or order of the Court.

101 to address the Rhodes residency issue. On or about February 2, 2026, Plaintiff communicated with State Representative Brock Martin and State Senator Ed Jackson regarding a proposed charter amendment that had been directed through MTAS and was pending before the General Assembly.

15.	On February 19, 2026, Representative Brock Martin contacted Plaintiff and informed him that Defendant Donna Ross had called his office to accuse Plaintiff of making unauthorized charter changes, and that the matter would be raised at the upcoming Board meeting on February 23, 2026. Representative Martin subsequently communicated his assessment that Plaintiff had done nothing wrong and described the Board's subsequent action against Plaintiff as a "witch hunt."

16.	On February 23, 2026, Defendants Clark, Ross, White, and Rhodes voted in favor of a motion to suspend Plaintiff for ten business days without pay, which passed four to three. This vote arose under an agenda item listed as "Discuss/Approve Charter Change" — not under any agenda item referencing personnel action or the City Recorder's employment. Plaintiff was not provided constitutionally adequate notice that his employment status was at risk prior to this vote, nor was he afforded a meaningful opportunity to be heard before the suspension was imposed. Mayor Wildridge presided over the meeting and orchestrated the Board's action against Plaintiff.

17.	On March 9, 2026, the Board held a special called meeting. Defendants Clark, Ross, White, and Rhodes voted in favor of a motion to terminate Plaintiff's employment, which purportedly passed four to three. The agenda item listed was "Discuss/Approve City Recorder." Plaintiff was not provided constitutionally adequate notice of the specific grounds for the proposed termination, nor was he afforded a meaningful pre-termination hearing at which he could respond to such charges, as required by the Fourteenth Amendment to the United States

Constitution and the City's own Charter. Mayor Wildridge presided over the meeting and actively participated in the decision to terminate Plaintiff. Plaintiff received a letter dated March 10, 2026, notifying him of his termination, which was delivered to him by the Chief of Police.

18.    The four-to-three vote to terminate Plaintiff on March 9, 2026 was *void ab initio* and of no legal effect because Defendant Tim Rhodes, who voted in favor of termination, was no longer qualified to hold the office of Alderman at the time of the vote. As set forth above, Rhodes's position was presumed vacant under Section 9 of the Charter and vacant by operation of law under T.C.A. § 8-48-101 from and after October 3, 2025, when he moved outside the city limits — more than five months before the termination vote. A person whose office is vacant possesses no legal authority to act as a member of the Board and may not cast a valid vote on Board action. Without Rhodes's unlawful vote, the motion to terminate Plaintiff failed three to three, as there were insufficient votes to carry. The purported termination is therefore void *ab initio*.

19.    The individual Defendants' decisions to suspend and then terminate Plaintiff were motivated, at least in substantial part, by Plaintiff's protected communications with elected officials and public officers, including his communications with State Representative Brock Martin and District Attorney General Jody Pickens regarding official city matters. Those communications were protected under the Tennessee Public Employee Political Freedom Act, T.C.A. § 8-50-601 et seq.

20.    As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered loss of employment, loss of income and benefits, damage to his professional reputation, mental anguish, and emotional distress, and has been required to retain legal counsel to protect and vindicate his rights.

## COUNT I
## FOURTEENTH AMENDMENT DUE PROCESS CLAIMS
### (42 U.S.C. § 1983)

21.    Plaintiff incorporates by reference the factual statements contained in paragraphs 2 through 20 of this Complaint.

22.    Section 13 of the City of Lexington's Charter expressly provides that the City Recorder shall serve "until removed from the office for cause or resignation." This for-cause-only termination provision, contained in the City's own Charter, created a legitimate claim of entitlement to continued employment that constitutes a constitutionally protected property interest within the meaning of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Board of Regents v. Roth*, 408 U.S. 564 (1972*); Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985). Plaintiff could not be deprived of this property interest without constitutionally adequate process.

23.    The Due Process Clause of the Fourteenth Amendment prohibits the deprivation of a protected property interest without procedurally adequate process. At a minimum, due process requires that an employee with a protected property interest in continued employment receive: (a) notice of the grounds for the proposed termination; and (b) a meaningful opportunity to respond to those charges before the deprivation occurs. *Cleveland Board of Education v. Loudermill,* 470 U.S. 532 (1985).

24.    Each of the Defendants, acting separately and in concert, under color of law, in both their individual and official capacities and as policy makers for the City of Lexington, deprived Plaintiff of his constitutionally protected property interest in continued employment without affording him constitutionally adequate process. Plaintiff was not provided with written notice of specific charges or grounds supporting his termination prior to the March 9, 2026, vote, and was not afforded a meaningful pre-termination hearing at which he could respond to such

charges. The individual Defendants' participation in and votes in favor of the termination, without ensuring that Plaintiff received constitutionally adequate process, violated Plaintiff's clearly established rights under the Due Process Clause of the Fourteenth Amendment.

25.    In addition, each of the Defendants, acting separately and in concert, deprived Plaintiff of his constitutionally protected property interest without due process when they voted to suspend him without pay on February 23, 2026, again without adequate prior notice and without affording Plaintiff a meaningful opportunity to be heard.

26.    The right of a public employee with a protected property interest in continued employment to receive notice and an opportunity to be heard prior to termination was clearly established by *Loudermill* and its progeny at the time of the Defendants' actions. No reasonable official in the Defendants' positions could have believed that suspending or terminating a public employee with a protected property interest in employment, without providing that employee notice and a hearing, was consistent with clearly established constitutional law. Accordingly, the individual Defendants are not entitled to qualified immunity.

27.    As a direct and proximate result of Defendants' deprivation of Plaintiff's due process rights, Plaintiff has suffered the damages described herein. The individual Defendants are personally liable for compensatory damages. In addition, because their actions were taken knowingly, intentionally, and in callous disregard of Plaintiff's federally protected rights, the individual Defendants are liable for punitive damages under 42 U.S.C. § 1983.

**COUNT II**
**TENNESSEE PUBLIC EMPLOYEE POLITICAL FREEDOM ACT**
**(T.C.A. § 8-50-601 ET SEQ.)**

28.    Plaintiff incorporates by reference the factual statements contained in paragraphs 2 through 20 of this Complaint.

29.     The Tennessee Public Employee Political Freedom Act of 1980, T.C.A. § 8-50-601 et seq., provides that no public employee may be prohibited from communicating with an elected public official for any job-related purpose, and that it is unlawful for any public employer to discipline, threaten to discipline, or otherwise discriminate against an employee because such employee communicated with an elected public official.

30.     Plaintiff is a "public employee" within the meaning of T.C.A. § 8-50-602(b), as a person who provided services for a municipality of Tennessee for compensation.

31.     Plaintiff engaged in protected communications with elected public officials, including State Representative Brock Martin and District Attorney General Jody Pickens, regarding job-related matters — specifically the Tim Rhodes residency issue and the City's charter amendment — both of which were matters of official city business.

32.     Plaintiff's communications with Representative Martin and District Attorney General Pickens were a substantial or motivating factor in the Defendants' decisions to suspend and ultimately terminate Plaintiff. Within days of Representative Martin advising Plaintiff that Defendant Ross had called his office to complain about Plaintiff regarding the charter matter, the Board voted to suspend Plaintiff without pay. Plaintiff was terminated shortly thereafter.

33.     Defendants' suspension and termination of Plaintiff in retaliation for his protected communications with elected public officials constitutes a violation of the Tennessee Public Employee Political Freedom Act, T.C.A. § 8-50-601 et seq., entitling Plaintiff to all remedies available under that Act.

## COUNT III
## DECLARATORY RELIEF — TERMINATION VOID *AB INITIO*
### (28 U.S.C. § 2201; T.C.A. § 8-48-101; T.C.A. § 29-35-101)

34.     Plaintiff incorporates by reference the factual statements contained in paragraphs 2 through 20 of this Complaint.

35.     Pursuant to 28 U.S.C. § 2201 and the Court's supplemental jurisdiction over state law claims under 28 U.S.C. § 1367, Plaintiff seeks a declaration that the Board's March 9, 2026 vote to terminate his employment was void *ab initio* and of no legal force or effect.

36.     Section 9 of the City Charter expressly provides that "[i]n the event the Mayor or Alderman should move from the municipality during their term of office, their position shall be presumed to have been vacated and it shall be declared vacant and filled by the remaining members of the Board." Independently, T.C.A. § 8-48-101 provides that the office of a municipal official becomes vacant by operation of law when that official ceases to reside within the municipality for which he or she was elected. Defendant Rhodes ceased to be a resident within the corporate limits of the City of Lexington no later than October 3, 2025, when he purchased a home outside the city limits. His office was therefore presumed vacant under Section 9 of the Charter, and vacant by operation of law under T.C.A. § 8-48-101, as of that date. The Board had a duty to declare his position vacant; it failed to do so, and instead permitted Rhodes to continue casting votes on official Board action.

37.     Notwithstanding the vacancy in his office, Defendant Rhodes continued to participate in, and cast votes at, meetings of the Board of Mayor and Aldermen. On March 9, 2026, Rhodes cast one of the four affirmative votes purporting to terminate Plaintiff's employment. Without Rhodes's vote, the motion to terminate failed. A person who holds no lawful authority to act as a member of a deliberative body possesses no authority to cast a deciding vote on official action. Accordingly, the Board's purported vote to terminate Plaintiff is void ab initio.

38.     Plaintiff is entitled to a declaration that: (a) Defendant Rhodes's office was presumed vacant under Section 9 of the City Charter and vacant by operation of law under T.C.A. § 8-48-101 as of October 3, 2025; (b) Rhodes lacked legal authority to participate in or vote at the

March 9, 2026 Board meeting; (c) the Board's four-to-three vote to terminate Plaintiff is void *ab initio* and of no legal effect; and (d) Plaintiff's employment as City Recorder was not lawfully terminated and he is entitled to reinstatement and all back pay and benefits.

**COUNT IV**
**TENNESSEE HUMAN RIGHTS ACT — RETALIATION**
**(T.C.A. § 4-21-401 ET SEQ.)**

39.     Plaintiff incorporates by reference the factual statements contained in paragraphs 2 through 20 of this Complaint.

40.     The Tennessee Human Rights Act, T.C.A. § 4-21-401 *et seq*. (hereinafter the "THRA"), prohibits any employer from retaliating or discriminating against an employee because such employee has opposed a practice declared discriminatory by the THRA or has made a charge, testified, assisted, or participated in any investigation, proceeding, or hearing under the THRA.

41.     The City of Lexington is an "employer" within the meaning of the THRA, T.C.A. § 4-21-102(5), in that it employs eight or more persons within the State of Tennessee.

42.     Plaintiff is an "employee" within the meaning of the THRA, T.C.A. § 4-21-102(4), as an individual employed by the City of Lexington.

43.     Plaintiff engaged in protected activity under the THRA when he advised the Board of Mayor and Aldermen at the July 29, 2024 Board meeting that the City's proposed compensation practices — specifically, setting pay for jobs predominantly held by minority employees below the levels recommended by the City's own job evaluation study, while compensating jobs predominantly held by white employees at or above those recommended levels — could constitute illegal race-based compensation discrimination in violation of both the THRA and Title VII of the Civil Rights Act of 1964. Plaintiff's communications constituted opposition to employment practices made unlawful by the THRA within the meaning of T.C.A. § 4-21-301.

44.    Plaintiff's protected opposition activity was a substantial or motivating factor in the Defendants' decisions to suspend and ultimately terminate his employment. The temporal and causal connection between Plaintiff's opposition to the unlawful compensation practices and the individual Defendants' subsequent campaign to remove him from his position is evidence of retaliatory intent.

45.    The unlawful retaliatory employment practices complained of herein were intentional and were done with reckless indifference to Plaintiff's rights protected by the THRA.

46.    As a direct and proximate result of Defendants' retaliation in violation of the THRA, Plaintiff has suffered the damages described herein, including loss of employment, loss of income and benefits, mental anguish, and damage to his professional reputation.

## V. DAMAGES

47.    As a direct and proximate cause of the foregoing deprivations of constitutional freedoms and statutory rights committed by Defendants, Plaintiff has suffered mental anguish, public humiliation, diminished reputation, loss of employment, loss of income, loss of benefits of employment, and has been required to retain legal counsel to defend and prosecute his rights.

48.    As a basis for punitive damages, Plaintiff would show that the deprivations of his constitutional rights and statutory rights by the individual Defendants — Gordon Wildridge, Chip Clark, Donna Ross, Jimmy White, and Tim Rhodes — were knowingly, intentionally, and maliciously done; and said acts were further an abuse of the power and trust vested in public officers. Punitive damages are sought against the individual Defendants in their individual capacities only.

## VI.  PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, PLAINTIFF RESPECTFULLY REQUESTS THAT THE COURT:

a.    Declare that Defendants' suspension and termination of Plaintiff violated his rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

b.    Declare that the Board's March 9, 2026, vote to terminate Plaintiff is void *ab initio* and of no legal force or effect because it was cast by a member who had ceased to be qualified to hold office, and that Plaintiff's employment as City Recorder was not lawfully terminated.

c.    Enter a preliminary and thereafter a permanent injunction requiring Defendant City of Lexington to reinstate Plaintiff to his position as City Recorder/CFO, with all back pay, benefits, and seniority to which he is entitled.

d.    Accept jurisdiction of the pendent state claims alleged in this Complaint.

e.    Award Plaintiff compensatory damages against all Defendants as authorized by 42 U.S.C. § 1983, the Tennessee Public Employee Political Freedom Act, and the Tennessee Human Rights Act in the amount to which he shows himself entitled.

f.    Award Plaintiff punitive damages against the individual Defendants — Gordon Wildridge, Chip Clark, Donna Ross, Jimmy White, and Tim Rhodes — in their individual capacities, for their knowing, reckless, and intentional acts as alleged herein.

g.    Award Plaintiff his costs, including a reasonable attorney's fee pursuant to 42 U.S.C. § 1988, the Tennessee Public Employee Political Freedom Act, and the Tennessee Human Rights Act.

h.    Award Plaintiff such further relief, general and specific, to which he may

be entitled.

i.    Plaintiff demands that a jury be impaneled to try this cause.


Respectfully Submitted,

WEINMAN & ASSOCIATES


s/Michael L. Weinman
Michael L. Weinman (#015074)
*Attorney for Plaintiff*
112 S. Liberty Street, Suite 224
P.O. Box 266
Jackson, TN 38302
Telephone: 731-423-5565
Facsimile:  731-423-5372
Email: mike@weinmanthomas.com


## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of May 2026, I electronically filed the foregoing document (Complaint) with the Court's ECF system. Service of this Complaint will be made on Defendant with summonses to be issued by the Clerk per the Federal Rules of Civil Procedure.

s/Michael L. Weinman
Michael L. Weinman (#015074)